

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2004

# Morrissey v. Luzerne Comm

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4346

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Morrissey v. Luzerne Comm" (2004). *2004 Decisions.* Paper 211.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/211

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 03-4346

_____

MARY ANN MORRISSEY

Appellant,

v.

LUZERNE COUNTY COMMUNITY COLLEGE; RICHARD AMICO,
Individually and as Supervisor of LCCC,

Appellees.

_____

On Appeal from the United States District Court
For the Middle District of Pennsylvania
(Civ. A. No. 02-1511)
District Judge: Honorable James M. Munley

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 28, 2004

_____

Before: ROTH, BARRY, and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion Filed: October 19, 2004)

_____

OPINION

_____

Garth, Circuit Judge:

This appeal requires us to decide whether Mary Ann Morrissey introduced sufficient evidence to survive summary judgment in her age and gender discrimination and retaliation suit against Luzerne County Community College ("LCCC") and Richard Amico, individually and as supervisor of LCCC. The District Court concluded that she did not, finding that she failed to present evidence of discriminatory intent. We will affirm.

## I.

Because we write exclusively for the benefit of the parties who are well acquainted with the facts and procedural posture of the present action, we will recount only those matters relevant to the issues before us. Morrissey, who is a female over sixty years of age, was a full-time science department technician at LCCC during the relevant time period. In December 1999, Morrissey applied for an Instruction Support Assistant ("ISA") position with LCCC. On May 12, 2000, after completing several interviews, Morrissey received a letter informing her that she had been selected for the position.

However, in June 2000, Richard Amico, Associate Dean of Human Resources, informed Morrissey that a complaint had been filed regarding the filling of the ISA position due to the procedure followed in the hiring process. LCCC policy granted unsuccessful candidates the right to appeal hiring decisions to the President of the

college.[1]

In the instant case, the complaint, filed by another LCCC employee, Michael Hrinko, alleged that the search committee used criteria (interpersonal skills) not mentioned in the job description or the vacancy announcement.[2] LCCC's then-President Jon Larson requested that the process be reviewed. Amico subsequently drafted a report on the initial job search process, noting that Hrinko's appeal was based on (1) his possession of both the "minimum position qualifications" and better position qualifications than Morrissey and (2) his lack of knowledge "of any basis upon which a finding could be made that Ms. Morrissey demonstrated interpersonal and problem solving skills that are critical to the success of this position." A154. The report concluded that, although there was no basis to Hrinko's statement that he was better qualified to fulfill the position requirements than Morrissey, he was nonetheless "correct in his assertion that "the search committee used criteria (interpersonal skills) not

---

[1]LCCC's Employee Recruitment, Search and Selection Procedures (Amended June 27, 2000) provides, in pertinent part:

> Applicants who wish to appeal hiring decisions may do so by contacting the Human Resources Department within ten (10) workdays of notification of non-selection. The Associate Dean of Human Resources will promptly schedule a meeting with the President to hear the applicant's appeal. The President may take action to terminate the search, temporarily rescind an appointment, and/or re-institute a new search if the President is persuaded that the applicant has presented a basis warranting such actions.

A328.

[2]Hrinko complained, *inter alia*, that "I am unaware of any basis upon which a finding could be made that Ms. Morrissey 'demonstrated better interpersonal and problem solving skills that are critical to the success of this position.'" A150.

-3-

mentioned in the job description, nor the vacancy announcement." A157. After review of Amico's report, President Larson recommended that the search be terminated and a new search instituted. Larson noted that:

> while it appears to me that the search committee has selected the most qualified candidate for the position, Mr. Hrinko's appeal appears to be justified since the candidate was not selected based on the merit of her qualifications exactly as they are contained in the job vacancy positing.

A183. As a result, the position of ISA was posted again in July 2000.

After interviews for the second posting of the ISA position, another candidate, Mark Choman, who was not a candidate in the first posting, was selected for the position. Choman possessed more technical background, more experience and was the best qualified of the candidates for the position, inasmuch as he was ranked significantly higher after the interviews and presentation than Morrissey or any other candidate.

In March 2003, Morrissey retired from LCCC, citing health problems and a hostile work environment.

Morrissey filed her seven-count complaint on August 27, 2002 in the District Court for the Middle District of Pennsylvania, alleging age and gender discrimination and retaliation in contravention of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 951 *et seq.* ("PHRA"), as well as a violation of her Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. The District Court granted LCCC's motion for summary judgment on

all counts. Morrissey then filed a timely appeal.

Our review of a district court's grant of summary judgment is plenary, and we are required to apply the same test the district court should have utilized initially. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987) (en banc). We are required to examine the evidence of record in the light most favorable to Morrissey, as the party opposing summary judgment, and resolve all reasonable inferences in her favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "This standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." *Stewart v. Rutgers, The State University*, 120 F.3d 426, 431 (3d Cir. 1997) (quoting *Robinson v. PPG Indus. Inc.*, 23 F.3d 1159, 1162 (7th Cir. 1994).

The District Court had subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the PHRA claims pursuant to 28 U.S.C. § 1367(a). We have jurisdiction under 28 U.S.C. § 1291.

## II.

We turn first to Morrissey's age and gender discrimination claims under the ADEA, the PHRA, and Title VII. Morrissey contends that both her age and gender discrimination claims should have survived summary judgment under the *McDonnell Douglas* indirect evidence standard. She further contends that her age discrimination claims should, in the alternative, have survived summary judgment under the direct

evidence standard enunciated in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

**A.      McDonnell Douglas**

Disparate treatment claims brought under Title VII, the ADEA and the PHRA are analyzed using the familiar three-step framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  Under this analysis, (step one) the plaintiff must first make a *prima facie* showing of discrimination by establishing that (i) she belongs to a protected class; (ii) she applied for and was qualified for a job the employer was trying to fill; (iii) though qualified, she was rejected; and (iv) circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class.  *Jones v. School District of Philadelphia*, 198 F.3d 403 (3d Cir. 1999).

Step two: once the plaintiff has established a *prima facie* case of discrimination the burden shifts to the defendant "to articulate some legitimate nondiscriminatory reason for the employee's rejection." *McDonnell Douglas*, 411 U.S. at 802.  Step three: the burden then shifts back to the plaintiff who must show that the nondiscriminatory reason articulated by the defendant is in fact a pretext for discrimination.  *Id*. at 804.

In this appeal, we find it unnecessary to consider steps one and two of the *McDonnell Douglas* scheme.  Step one is not contested, and it is clear that LCCC satisfied step two by proffering a legitimate nondiscriminatory reason for its failure to

---

[3]*See Narin v. Lower Merion Sch. Dist.*, 206 F.3d 323, 331 (3d Cir. 2000) (using the *McDonnell Douglas* framework in an ADEA context); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir.1995) (stating that PHRA claims are analyzed under *McDonnell Douglas* "consistently with interpretations of Title VII").

promote Morrissey, *i.e.*, that it followed established procedures in terminating the first search and conducting a new search based on a clarified job description, which resulted in the hiring of the most qualified candidate. At issue here, then, is whether Morrissey satisfied her burden of showing that LCCC's proffered reason for the adverse employment action was not the true reason for the decision but was instead pretextual.

To avoid summary judgment in a Title VII or ADEA action after the employer has proffered a legitimate nondiscriminatory reason for an adverse employment action, the plaintiff (here Morrissey) must produce evidence which: (1) casts sufficient doubt upon each proffered reason so that a fact finder could reasonably conclude that each reason was fabrication, or (2) allows a fact finder to infer that discrimination was more likely than not a motivating or determinative cause of action. *See Fuentes v. Perskie*, 32 F.3d 759 (3d Cir. 1994). Instead of pointing to evidence from which a factfinder could reasonably conclude that discrimination was the more likely cause of her failure to receive the promotion, Morrissey principally tries, pursuant to the first *Fuentes* prong, to cast doubt on LCCC's explanation.

To discredit the employer's proffered reason, the plaintiff cannot merely show that "the employer's decision was wrong or mistaken." *Fuentes*, 32 F.3d at 765. Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.*

(citations omitted). Here, Morrissey claims she has cast doubt on LCCC's legitimate nondiscriminatory reason by establishing that (1) the search could not be terminated since she was already selected; (2) Hrinko never complained that the original job posting failed to contain a specific notation of "interpersonal skills" and (3) there was nothing wrong with the first job search. We address each assertion *seriatim*.

First, the record plainly indicates that, upon an appeal from any hiring decision, the president "may take action to terminate the search, temporarily rescind an appointment, and/or re-institute a new search." A328. Clearly, then, President Larson's decision to re-institute a new search did not run afoul of established hiring procedures. Even so, Morrissey argues that LCCC's decision to grant the appeal was virtually unprecedented, thus rendering it implausible, inconsistent, contradictory or weak. We are most hesitant, however, to find a decision inconsistent with an employer's usual mode of operation where that decision is fully consistent with written policy. Absent additional evidence revealing the empty formalism of LCCC's compliance with its procedures, the mere fact that LCCC rarely, if ever, granted appeals is insufficient, in and of itself, to give rise to a reasonable inference of discriminatory motive.

Second, the record contradicts Morrissey's assertion that Hrinko never complained about the failure of the first job posting to refer to interpersonal skills. Hrinko did in fact make such an allegation, and Amico's report, which was submitted to President Larson, found that allegation to be meritorious.

-8-

Third, LCCC found Hrinko's appeal to have merit because Morrissey was not selected based on the merit of her qualifications exactly as they were set forth in the job vacancy posting, and Morrissey adduces no evidence showing that determination to be pretextual. Morrissey argues that there was nothing procedurally flawed in the initial search procedure. In so arguing, she cites the deposition transcript of two individuals, one of whom was on the initial search committee. Morrissey first cites to the testimony of Dr. Nancy Kosteleba, a search committee member, for the proposition that there was nothing wrong with the initial job posting. Kosteleba's deposition reveals, however, that she had no knowledge of the specifics of the appeal instituted by Hrinko, which significantly undermines, if not destroys, the probative value of such testimony. Morrissey also cites to the deposition testimony of John Wills, then-Vice-President of Academic Affairs, who opined that he thought the initial proceeding resulted in the most qualified person being selected for the job. He admitted, though, that he did not know about the "legal part" of the claim.

At best, therefore, Morrissey has shown that two LCCC officials, who were not involved in the appeal process, found the initial job search to be sound. We do not think that a factfinder could reasonably construe these isolated statements to mean that LCCC invidiously discriminated against Morrissey because of her age or sex. The following factual predicate remains unchallenged: one, that LCCC had a policy of allowing unsuccessful applicants to appeal; two, that pursuant to that policy, an unsuccessful

candidate, Michael Hrinko, appealed; three, that in response, President Larson requested an appropriate review, resulting in a detailed report drafted by Amico, which outlined Hrinko's complaint, noting both the meritorious and baseless parts thereof; four, that upon reviewing the report, President Larson granted the appeal and re-instituted a new search, a presumptively appropriate exercise of his discretionary power, as set forth in the written hiring procedures; and five, that the second posting resulted in the most qualified candidate being selected.

Against this factual predicate, Morrissey's assertions are insufficient to compel a finding of pretext. Morrissey had to show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

Accordingly, we hold that Morrissey cannot defeat summary judgment on her age and gender discrimination claims under the scheme of proof set out in *McDonnell Douglas*.[4]

---

[4] We note that Morrissey's § 1983 claim is based upon LCCC's alleged violation of the Equal Protection clause and Title VII. To make out a claim under the Equal Protection clause, a plaintiff must prove that she suffered purposeful or intentional discrimination on the basis of gender. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977). Consequently, the showing plaintiff must make for § 1983 gender discrimination is the same as for Title VII claims. *See Stewart v. Rutgers, The State Univ.*, 120 F.3d 426, 432 (3d Cir.1997). Inasmuch as Morrissey failed to support her claims of gender discrimination under Title VII, her § 1983 claim fails as well.

**B.      Price Waterhouse**

We therefore move on to Morrissey's argument that she was entitled to survive summary judgment under *Price Waterhouse*.  Under Justice O'Connor's controlling opinion in *Price Waterhouse*, if a plaintiff "show[s] by *direct evidence* that an illegitimate criterion was a substantial factor in the decision," the burden of persuasion shifts to the employer "to show that the decision would have been the same absent discrimination." 490 U.S. at 276.  A plaintiff attempting to prove discrimination by direct evidence faces a "high hurdle." *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 976 (3d Cir. 1998). Specifically, the evidence must demonstrate that the "decision makers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Id.*

Here, Morrissey relies exclusively on certain ageist remarks made by President Larson in an *unrelated* case brought against LCCC in the District Court for the Middle District of Pennsylvania. *See Merkle v. Luzerne County Community College*, No. 02-0515, (M.D. Pa. filed June 19, 2003).  Morrissey asked the District Court in this case to take judicial notice of the factual findings in *Merkle*, which allegedly demonstrate that President Larson wanted to force the retirement of certain administrative employees in 1998 based on their age.[5]  While the District Court, for reasons that remain unclear, failed to rule on Morrissey's request, we have no difficulty concluding that such a request, even

---

[5] Because the record reflects that Morrissey relied exclusively on *Fed. R. Evid.* 201(b) in trying to place President Larson's other acts in the record, we express no opinion as to whether Morrissey could have otherwise introduced such evidence by establishing its admissibility under *Fed. R. Evid.* 404(b).

if considered, should have been rejected.

The Federal Rules of Evidence provide that courts may only take judicial notice of facts outside the trial record that are "not subject to reasonable dispute." *Fed. R. Evid.* 201(b). A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. *See id.*; *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001). Facts adjudicated in a prior case fall short of this standard. As we have previously stated, "[t]aking judicial notice of the truth of the contents of a filing from a related action could reach, and perhaps breach, the boundaries of proper judicial notice." *Werner*, 267 F.3d at 295 (declining to take judicial notice of board minutes filed in separate action involving separate parties); *see also Liberty Mutual Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384 (2d Cir. 1992) ("Facts adjudicated in a prior case do not meet either test of indisputability contained in Rule 201(b): they are not usually common knowledge, nor are they derived from an unimpeachable source."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (stating that the effect of judicially noticing a fact is to preclude the opposing party from introducing contrary evidence and essentially direct a verdict against him as to the noticed fact). As such, we conclude that it would be improper for either this Court, or the District Court, to consider the substance of the factual record in the unrelated *Merkle* case.

As Morrissey proffers no other direct evidence, we hold that Morrissey cannot

survive summary judgment on her age discrimination claims under *Price Waterhouse.*

### III.

Proceeding to consider Morrissey's claims of retaliation, we note at the outset that although Morrissey's claims of retaliation are brought under Title VII and the PHRA, the analytical framework for each is identical. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir.2002) (analysis for Title VII, ADEA, and PHRA retaliation claims identical). In order to establish a *prima facie* case of retaliation, a plaintiff must show: (1) that he or she engaged in a protected activity; (2) that his or her employer took an adverse employment action; and (3) a causal link between the two. *See id.* at 567-68.

To obtain summary judgment, the employer must show that the trier of fact could not conclude, as a matter of law, (1) that retaliatory animus played a role in the employer's decisionmaking process and (2) that it had a determinative effect on the outcome of the process. *Krouse v. American Sterilizer, Co.*, 126 F.3d 494, 501 (3d Cir. 1997). These two factors may be met either by establishing plaintiff's inability to raise a genuine issue of material fact as to one or more elements of the plaintiff's *prima facie* case or, if the employer offers a legitimate non-retaliatory reason for the adverse employment action, whether the employer's proffered explanation was a pretext for retaliation. *Id.*

The District Court offered both alternative grounds for granting LCCC's motion for summary judgment on Morrissey's retaliation claims. We conclude that Morrissey

has failed to submit sufficient evidence to show pretext.

## A.    Prima Facie Case

Morrissey avers that she complained of gender discrimination to Amico upon hearing that she had not secured the ISA position. Within six months of complaining to Amico, Morrissey learned that she did not get the ISA position after the second posting.

We first note that Morrissey's informal complaint to Amico of gender discrimination, albeit in somewhat vague and conclusory terms, constitutes protected activity, thus satisfying the first element in the *prima facie* case. *See Sumner v. U.S. Postal Service*, 899 F.2d 203, 209 (2nd Cir. 1990) (noting that protected activity includes informal protests to management). In addition, Morrissey's failure to obtain the ISA position constitutes the adverse employment action, which satisfies the second element in the *prima facie* case. Whether Morrissey raised a genuine issue of material fact as to the final element–the causal connection between the protected activity and the adverse employment action–is more problematic.

In trying to establish the causal connection, Morrissey argues that she was denied the ISA position only six months after complaining of gender discrimination. We have recognized the probative value of temporal proximity in retaliation cases. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000). Whether the causal connection may be inferred solely from the close proximity in time between the protected activity and the adverse action is dependent upon the particular factual circumstances in a

-14-

given case. *Id.* In *Krouse*, for instance, we held that an allegedly retaliatory employment action occurring nineteen months after the protected activity did not, standing alone, support a finding of a causal link. We stated that the timing must be "unusually suggestive" of retaliatory motive before a causal link will be inferred. 126 F.3d at 503.

We do not believe the six month duration between the time Morrissey complained to Amico and the time LCCC filled the ISA position is "unusually suggestive" of retaliatory motive. We must therefore look to other circumstantial evidence of retaliatory animus. *See Krouse*, 126 F.3d at 504 ("When temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus."). Morrissey submits that she was also the victim of a pattern of antagonism following her complaint. This antagonism allegedly manifested itself in the following ways: (1) she was displaced from her original office; (2) LCCC required Morrissey to be interviewed during the second selection while on sick leave, something never before required of a candidate; and (3) Morrissey, unlike the other candidates, was not informed about the format of the interviews.

LCCC contends that there is sufficient evidence to rebut these allegations. That may be true, but in so arguing LCCC misconstrues the nature of Morrissey's burden. Morrissey is only required to raise a genuine issue of fact as to the causal connection to establish her *prima facie* case. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (stating that burden of establishing a *prima facie* case is not

-15-

onerous). Morrissey has testified to this intervening antagonism, which, when considered together with the six month duration between the protected activity and adverse action, at a minimum, raises a factual question about the causal link. We thus conclude that Morrissey did meet the low threshold for establishing a *prima facie* case of retaliation.

## B.    Pretext

Nevertheless, Morrissey's claims fail because she has not presented sufficient evidence to rebut LCCC's legitimate nondiscriminatory reason for the adverse employment action. *See Krouse*, 126 F.3d at 501. A jury could not reasonably conclude, based upon the scant evidence adduced by Morrissey, that LCCC's proffered reason for the failure to promote was mere pretext. *See* discussion *supra* at part IIA.

The District Court, therefore, committed no error in entering summary judgment for LCCC on the retaliation claims.

## IV.

For the foregoing reasons, the District Court's order granting summary judgment in favor of LCCC will be affirmed.[6]

---

[6]We finally note that the parties failed to brief the remaining issues of qualified immunity (raised by LCCC) and punitive damages (raised by Morrissey). The District Court failed to discuss these issues after finding that Morrissey had not provided sufficient evidence from which a jury could reasonably conclude that she was the subject of illegal discrimination. We likewise need not address these issues.