### In re PEREGRINE SYSTEMS, INC. and Peregrine Remedy, Inc., Reorganized Debtors.

### No. 02–12740 (JKF).

United States Bankruptcy Court, D. Delaware.

Jan. 20, 2005.

---

Christopher James Lhulier, Laura Davis Jones, Paula Ann Galbraith, Pachulski, Stang, Ziehl, Young & Jones, PC, Wilmington, DE, Howard A. Cohen, Drinker, Biddle & Reath, LLP, Wilmington, DE, Kimberly E.C. Lawson, Kurt F. Gwynne, Reed Smith LLP, Wilmington, DE, Rosalie L. Spelman, Janssen, Kennan & Ciardi, PC, Wilmington, DE, for Debtors.

Don A. Beskrone, Office of U.S. Trustee, Wilmington, DE, U.S. Trustee.

Alfred Villoch, III, Edmon L. Morton, M. Blake Cleary, Robert S. Brady, Timothy Patrick Cairns, Young, Conaway, Stargatt & Taylor, LLP, Wilmington, DE, for Official Committee of Unsecured Creditors.

Jennifer Lee Scoliard, Joanne Bianco Wills, Stephanie Ann Fox, Klehr, Harrison, Harvey, Branzburg & Eller, Wilmington, DE, for Official Committee of Equity Security Holders and Post–Emergence Equity Committee.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

Peregrine Systems, Inc. ("Peregrine") and Peregrine Remedy, Inc. ("Reorganized Debtors") move for summary judgment disallowing the proofs of claim of Kenneth W. Bettin (Claim Nos. 868, 872) for age discrimination under the Age Discrimination in Employment Act ("ADEA"). Mr. Bettin failed to respond to this motion. The court is mindful of Mr. Bettin's pro se status and therefore has considered all relevant arguments and evidence provided by Mr. Bettin in earlier responses and motions and at argument on Peregrine's motion for summary judgment.

## FACTS

Peregrine developed and marketed software products for businesses. In 1998, Peregrine decided to expand its product base, mainly through acquisitions. In June of 2000, Peregrine acquired Harbinger Corporation. Kenneth Bettin, a business development manager in Atlanta, was hired by Harbinger one month prior to the acquisition. Peregrine decided to retain Mr. Bettin to sell software and assigned him to the Managed Service Provider Organization ("MSP"). MSP was comprised of 16 individuals, ranging in age from 28 years old to 53 years old. Seven of these individuals were assigned to the MSP Market Specialists group. Four were assigned to MSP Sales West and five to MSP Sales East. Mr. Bettin was assigned to the MSP Sales East group whose supervisor was Bernard McCullom, age 51. Mr. Bettin, age 48, was a member of MSP Sales East and based in Atlanta. The other members of the team were Peter Taylor, age 43, based in Roswell, Georgia, a suburb of Atlanta, Nancy Calcerano, age 45, based in Skillman, New Jersey; Shannon Erman, age 34, based in Dunn Loring, Virginia, outside Washington D.C.; and Kevin Ziesig, age 41, based in Brentwood, Tennessee.

Peregrine's financial condition declined after the acquisition of Harbinger. Peregrine reported a nine month loss of $677.9 million as of December 31, 2001. To reduce costs and increase cash flow in the face of what it characterizes as a "severe liquidity crisis", Reorganized Debtors' Brief in Support of Motion for Summary Judgment, Dkt. No. 3233 at 4, Peregrine began a company-wide reduction in force [RIF]. It also took steps towards the di-

---

1. The court's jurisdiction was not at issue. This Memorandum Opinion constitutes our findings of fact and conclusions of law.

vestiture of the Harbinger business unit as well as closing some facilities and discontinuing various contractual arrangements. Prior to these reductions in force, Peregrine had over 3,000 employees. In February of 2002, 430 employees were terminated. After this reduction, MSP was left with two managers, ages 53 and 51, and 13 team members, ages 45, 44, 44, 43, 41, 41, 36, 35, 34, 34, 31, 29 and 28. In June of 2002, Peregrine's workforce was reduced by another 1,150 and in December, 2002, by 560 more.[2] The MSP sales unit of which Mr. Bettin was a part was subject to the February 2002 and the June 2002 reductions in force. Mr. Bettin and two others, both of whom were marketing specialists, were terminated. The two marketing specialists were aged 31 and 51. Among all of those terminated, only Mr. Bettin has filed a discrimination claim.

Peregrine explained that Mr. Bettin's termination was a product of geography and Mr. Bettin's performance. As of February 2002, after having been employed by Peregrine for over 20 months, Mr. Bettin had sold $314,925 of product and Peter Taylor, also located in Atlanta, had sold $6,697,184 of product. Mr. Bettin was required to meet a quota which was set in 2002 at $2,187,500. His sales for the 2002 Fiscal Year (April 1 2001, to March 31, 2002) were only 14 percent of quota. Only one member of MSP Sales East, Shannon Erman, sold less product in the comparable period (i.e. $302,168 or $12,757 less than Mr. Bettin). However, according to the MSP Sales East team, Ms. Erman's quota was not met because a six million dollar sale fell through at the final stages. Nonetheless, Ms. Erman's territory was near Washington, D.C. Peregrine asserts that Mr. Bettin was terminated not only because he failed to meet his 2002 quota but because the other Georgian, Peter Taylor, had sold over six million dollars of product which amounted to 191 percent of the year's quota. Peregrine concluded that "having two sales representatives in the Atlanta region was redundant and unnecessary, especially in light of Mr. Taylor's performance." Reorganized Debtors' Brief in Support of Motion for Summary Judgment, Dkt. No. 3233 at 6. The other members of Mr. Bettin's team were based outside of the Atlanta territory and were retained to maintain Peregrine's presence on the East Coast. Id. Peregrine thought it best, considering the difference in performance, to eliminate one of the two Atlanta positions rather than sacrifice its presence in another sales region.

It is not disputed that upon his termination Mr. Bettin was offered a severance package which he rejected in favor of pursuing a claim of age discrimination. He was also provided with information required by the Older Worker's Benefit Protection Act, including the job titles and ages of other individuals who were terminated in the February 2002 RIF and those retained who were within the same "job classification or organizational unit". Reorganized Debtors' Brief is Support of Motion for Summary Judgment, Dkt. No. 3233 at 7. The only individual so listed was the then 43–year–old Mr. Taylor.

Mr. Bettin argues that he was discriminated against because his performance was substantially stronger when compared to younger employees retained. He also objects to his performance assessment because of a pending sale he was negotiating with Siemens for approximately $10,000,000 over the next year with an

---

2.  There were 190 other employees who voluntarily terminated their employment and 835 others were released as a result of the divestiture of Peregrine's subsidiary, Peregrine Remedy, Inc.

initial investment of approximately $2,000,000.[3]

## DISCUSSION

▮ Evidence of discrimination may be direct or indirect. *See Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 972 (3d Cir.1998). Direct evidence "must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision'". *Id.* at 976, quoting *Walden v. Georgia–Pacific Corp.*, 126 F.3d 506, 513 (3d Cir.1997), *cert. denied*, § 523 U.S. 1074, 118 S.Ct. 1516, 140 L.Ed.2d 669 (1998). There is no direct evidence of employment discrimination in this case. In indirect evidence cases, the Court of Appeals for the Third Circuit has adopted the following test to determine whether termination was based on age:

> a plaintiff must establish a *prima facie* showing that he or she: (1) was a member of a protected class (i.e. he or she was forty years of age or older); (2) was qualified for the position at issue; (3) suffered an adverse employment action; and (4) was replaced by a sufficiently

younger person, raising an inference of age discrimination.

*Anderson v. Consolidated Rail Corp.*, 297 F.3d 242, 249 (3d Cir.2002), citing *Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 234 (3d Cir.1999); *Connors v. Chrysler Financial Corp.*, 160 F.3d 971, 973–74 (3d Cir.1998).[4]

▮ The first three elements above are not in dispute. When addressing a case involving work force reduction as opposed to discharge or demotion cases, the fourth element can also be satisfied if a "similarly situated" and sufficiently younger person is retained. *Anderson v. Consolidated Rail Corp.*, 297 F.3d at 249. Within the specialist group to which Mr. Bettin had been assigned, only Mr. Taylor was in the same region (Atlanta, Georgia) and he was within the protected over–40 class. Only one retained employee of the same MSP group, Shannon Erman, was not in the protected class of employees.

What constitutes "sufficiently younger" is not measurable by any hard and fast rule. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729 (3d Cir.), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2611, 132 L.Ed.2d 854

---

**3.** In a response to interrogatories, Mr. Bettin also cites the following in support of his contention that his termination was based on his age:

1. he was the oldest member of his sales team;

2. "Peregrine had a youthful culture consistent with that found in ... the software industry";

3. he had higher sales than most of his peers;

4. he was first team member fired;

5. he had used personal contacts and his sales experience to "create an opportunity which was close enough to a sale where it could have been closed by other less experienced team members had Peregrine not run not newsworthy financial difficulties months after" his termination; Dkt. No. 3233 at 8;

6. he was given no reason for his termination and was told by his supervisor and

another that "it was NOT a performance issue" and he could use them as references. *Id.*, citing Mr. Bettin's Responses to Reorganized Debtor's First Set of Interrogatories, Response to Interrogatory No. 5, attached to Pemberton Decl. as Exhibit B. Emphasis in original.

**4.** This analysis is based on the test pronounced by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973): the plaintiff must establish a *prima facie* case by showing that the plaintiff is (a) a member of a protected class; (b) applied for and was qualified for a job opening; (c) was rejected for the position although qualified; and (d) that "circumstances give rise to an inference of unlawful discrimination such as might occur when the position is filled by a person not of the protected class".

(1995)(to establish a *prima facie* case plaintiff may point to "sufficient age difference between himself and his replacement such that a fact-finder can reasonably conclude that the employment decision was made on the basis of age" but no particular age difference must be shown). *See also Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 356 (3d Cir.1999)(age discrimination plaintiff need not prove he was replaced by someone outside of the protected class of 40 or older)(citing *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311–12, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996)). Notwithstanding the foregoing, Mr. Bettin has not presented a scintilla of evidence that he was terminated because of his age. *See Showalter v. University of Pittsburgh Med. Ctr.*, 190 F.3d 231, 235 (3d Cir.1999)(29 U.S.C. § 631(a) does not ban discrimination against employees aged 40 and older but forbids discrimination against employees because of their age; the protected class, however, is limited to those 40 years of age or older).

■ The relevant issue is the determination of which employees within the MSP would qualify as being "similarly situated" to Mr. Bettin. The United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), provided that once the plaintiff has made a *prima facie* showing of discrimination, the burden shifts to the defendant to establish a legitimate nondiscriminatory reason for the action. The burden then shifts back to the plaintiff to show that the reason articulated by the employer was simply a pretext for discrimination. *Morrissey v. Luzerne County Community College*, 117 Fed. Appx. 809, 2004 WL 2360988, at *2–*3 (3d Cir., October 19, 2004). In the instant case we find that Mr. Bettin has not made a *prima facie* case and, even if he had, the undisputed facts prove that Peregrine had a legitimate nondiscriminatory reason for its action. Mr. Bettin has presented nothing to the court to indicate that the reason was a pretext for discrimination.

■ In order to ascertain whether a "similarly situated" person was retained while Mr. Bettin was fired, we must determine whether the focus is properly the MSP group as a whole or the MSP Sales East team of which Mr. Bettin was a part. Peregrine argues that the only retained employee "similarly situated" to Bettin was Pete Taylor who was the only other member of the MSP Sales East team working in Bettin's sales region of Atlanta, Georgia. Peregrine asserts that its decision to terminate Mr. Bettin was the product of geography and Mr. Bettin's performance. Declaration of Mary Lou O'Keefe in Support of [Peregrine's] Motion for Summary Judgment ("O'Keefe Declaration") at 4, ¶ 11, Dkt. No. 3234. We find that the MSP Sales East is the relevant group in relation to which the "similarly situated" analysis must be made. This group was responsible for the East Coast sales and team members were assigned to different regions. According to the record evidence, only the Atlanta area had two sales representatives, Peter Taylor and Mr. Bettin. Of the two, only Mr. Taylor met the 2002 fiscal year quota. According to Ms. O'Keefe, Mr. Taylor's job performance was "substantially superior" to Mr. Bettin's. O'Keefe Declaration at 6, ¶ 13, Dkt. No. 3234. Mr. Taylor was "The best performer on the MSP Sales East team." *Id.* at 5, ¶ 12. Furthermore, Mr. Bettin's sales quota for the 2002 fiscal year was set at $2,187,500 but as of February 2002, one month before the end of the fiscal year, he had made sales of only $314,925. O'Keefe Declaration at ¶ 11. Mr. Taylor's sales totaled $6,697,184.

Before the February 2002 reduction in force, the MSP Sales East team had five members assigned to four areas. Three of those areas, New Jersey, Virginia, and Tennessee, were each assigned one individual. Mr. Bettin's territory of Atlanta, Georgia, was the only one to which two sales representatives were assigned. Considering the geography of the sales regions and the comparative performance of Mr. Bettin and Mr. Taylor, we agree with Peregrine's determination that only Mr. Taylor was similarly situated to Mr. Bettin. We note that Shannon Erman, who at the time was 34 years old, also had not met her 2002 quota but was retained by the company. However, Ms. Erman was the only member of the MSP Sales East team in her territory (Virginia, outside of Washington, D.C.) and the failure to meet quota was attributed to a six million dollar sale that fell through at the final stages. Debtors' Brief in Support of Motion for Summary Judgment, Dkt. No. 3233 at 6.

Mr. Bettin asserts that he was told that his termination was not based on reasons related to his job performance but that Peregrine now is contending that perform-

ance reasons were a factor. *See* Bettin's Response to First Set of Interrogatories, Exhibit B to Declaration of Gary A. Pemberton in Support of Motion for Summary Judgment, Dkt. No. 3235.[5] This dispute is not one of material fact inasmuch as it is undisputed that he did not meet his 2002 sales quota, there were two sales representatives in his territory, and the other sales representative, Peter Taylor, sold 191 percent of quota. O'Keefe Declaration at 5, ¶ 12, Dkt. No. 3234.[6]

Mr. Bettin asserts in his "response … to the brief & opposition to Bettin motion", Dkt. No. 2771, that he "spearheaded the successful sales activity with Siemens Corp." and that Peregrine should have taken that $1 million sale into account when determining his 2002 quota. However, it is undisputed that the Siemens Corp. sale was not completed. In an undocketed pleading[7] dated April 2, 2004, entitled "Kenneth W. Bettin['s] objection to response to 'Notice of reorganized debtors [sic] motion for summary judgment disallowing proofs of claim' of Ken Bettin," Mr. Bettin admits as much.[8]

5. In an undocketed pleading dated April 2, 2004, entitled "Kenneth W. Bettin objection to response to 'Notice of reorganized debtors [sic] motion for summary judgment disallowing proofs of claim' of Ken Bettin," Mr. Bettin states that notwithstanding the fact that he'd earlier been told that he was not dismissed for performance reasons, Peregrine now asserts that the decision to terminate him was "based upon regional redundancy of service issues in relation to a peer in the same region having higher performance." At the May 18, 2004, hearing, after a discussion with the parties on the record, the court accepted this pleading as Mr. Bettin's affidavit. However, it is still required that he file the document of record.

6. Nancy Calcerano, age 45 at the relevant time, also sold less than quota for 2002 but she was the only sales person in her New Jersey territory.

7. The court does not consider pleadings that have not been filed of record. However, Peregrine has not objected to Mr. Bettin's undocketed submissions. For that reason and in order to resolve the issues, we discuss the "objection to response" and its attachments.

8. He states in the April 2, 2004, "objection to response" that "[a]t the time of dismissal Mr. Bettin requested he be allowed to remain at Peregrine long enough to conclude the impending sale he had developed over the previous year, with Siemens." There was apparently at least one other Siemens sale. There were also different Siemens entities. See "Attachment 5.doc" to objection to response, an undated e-mail referring to Siemens, Siemens Automotive, Siemens Business Services. *See also* Dkt. No. 2771 referring to "Siemens Corp." and Response to Debtor's First Set of Interrogatories, Response to Interrogatory No. 22, referring to SBS. Exhibit B to Pem-

At the hearing on the argument on the motion for summary judgment on May 18, 2004, Mr. Bettin asserted that it did not matter that Mr. Taylor, also based in Georgia, exceeded quota in 2002 and Mr. Bettin did not because sales representatives were often hired because of the contacts they brought to the company and their customers could be anywhere. He asserts that his customer was in Germany and Detroit, the Tennessee representative had a customer in New Jersey, and Mr. Taylor's sales were all to a customer based in Pittsburgh. Tr. 5/18/04 at 39, Dkt. No. 3341. He further argued that he was fired because, "in a youth-oriented culture, if they have to cut down to five people, I was clearly the oldest." *Id.* at 40. However, of the members of his sales team, only Ms. Erman was under age 40. The others were 41, 43, and 45 years of age. Mr. Bettin was 48. O'Keefe Declaration at 3, ¶ 6, Dkt. No. 3234. Furthermore, there was at least one other person terminated from the MSP unit who was older than Mr. Bettin, including a marketing specialist who was 51 years old. Another marketing specialist aged 31 was also terminated. Debtors' Brief in Support of Motion for Summary Judgment at 5. Dkt. No. 3233. The record is undisputed that after the February 2002 RIF, the MSP retained two managers aged 53 and 51 [9] and 13 MSP team members aged 45, 44, 44, 41, 41, 36, 35, 34, 31, 29, and 28. *Id.*

■ Even if we accept Mr. Bettin's argument that a sales representative's loca-

tion did not matter so Peregrine's assertion of reliance on Mr. Taylor's superior performance should be disregarded, the record is devoid of any evidence that he was fired because of his age and there is likewise no evidence that he was "replaced by a sufficiently younger person to create an inference of age discrimination." *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 n. 3 (3d Cir.2002). Even if we conclude, for the sake of argument, that this was the case, we find that Peregrine has established a legitimate nondiscriminatory reason for his termination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)(once plaintiff has made a *prima facie* case of racial discrimination, the burden shifts "to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection"). *See also Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 512 (3d Cir.2004)("[i]f circumstantial evidence of age discrimination is used, then the proponent of the evidence must satisfy the ... test of *McDonnell Douglas Corp. v. Green*"). As explained in the declaration of Mary Lou O'Keefe, the Senior Vice President of Human Resources for Peregrine, Mr. Bettin was fired as part of the February, 2002, work force reduction of approximately 430 employees. DN 3234. O'Keefe explained that it was unnecessary to have two sales agents in the Atlanta region, especially when Mr. Taylor was significantly outperforming Mr. Bet-

berton Declaration, Dkt. No. 3235. Attached to his undocketed objection to response he attaches a "To Whom it May Concern" letter signed by Al Kincel, Chief Information Technology Officer at Siemens VDO Automotive, stating that "[i]n early to mid 2001 Ken Bettin coordinated a meeting ... where we signed a deal to purchase approximately $700K worth of Peregrine software in addition to maintenance on the software." This letter is undated and does not establish that the sale oc-

curred within the 2002 fiscal year. We also note that Mr. Bettin provided no evidence that even if the sale occurred within the relevant year that it would be sufficient to meet his quota.

9. One of these was the manager of the MSP Sales East, Bernard McCullom, who was 51 years old. Debtor's Brief in Support of Motion for Summary Judgment at 4. Dkt. No. 3233.

tin. While some team members in other regions were also underperforming, Peregrine exercised its business judgment in determining that its interests were best served by maintaining a sales presence in those regions. Given the widespread reduction in force that Peregrine implemented, Mr. Bettin's evidence falls far short of satisfying his burden. He has offered no evidence that the reasons stated by Peregrine for his termination in this matter were not legitimate. He has offered only his subjective belief that his termination was motivated by age discrimination because, in his opinion, Peregrine had a youth-oriented culture.

■ To survive summary judgment when an employer offers a legitimate reason, plaintiff must submit evidence which: "(1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that the fact finder could reasonably conclude that each reason was a fabrication; or (2) allows the fact finder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 761 (3d Cir.1994).

■ To discredit the employer's proffered reason, the plaintiff cannot merely show that "the employer's decision was wrong or mistaken." Rather, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Fuentes*, 32 F.3d at 765. Regarding the sale to Siemens that was not concluded when Mr. Bettin was fired, we note that it is not unreasonable or discriminatory for Peregrine to distinguish between a pending sale and a realized sale.

In *Elliott v. Group Medical & Surgical Service*, 714 F.2d 556 (5th Cir.1983), the employer consolidated divisions to eliminate overlaps in respective sales functions. In the process, six top marketing executives with an average age of 49.5 were terminated and replaced with executives with an average age of 36.5. Despite the statistical evidence, the Fifth Circuit Court of Appeals directed a verdict in favor of the employer because the employee's general testimony regarding his subjective belief that he was discharged on the basis of age discrimination was insufficient. *Id.* at 764. Considering that the average age of the retained MSP employees in this case actually increased after the February 2002 reductions from 43.3 to 43.5 years of age (DN 3234), the statistical evidence supporting age discrimination is significantly weaker than that advanced in *Elliott*. We further note that of the thirteen members of the MSP unit who remained after the February 2002 RIF, there were six individuals over 40 years of age and seven under 40. Of those who remained on the MSP Sales East team, only one person was under 40 and Mr. Bettin has presented no evidence that she was retained for her youth. Inasmuch as the other team members were all over 40 years old, we cannot draw an inference to the contrary.

In order to avoid summary judgment, plaintiff must provide specific evidence which raises a genuine issue of material fact. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir.1989), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This can be done directly, with evidence such as age-biased statements by superiors, or indirectly, by showing that the proffered explanation should not be believed. *See generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Mr. Bettin has provided no specific evidence that would indicate that the proffered reasons for dismissal were a pretext for discrimination.

## CONCLUSION:

Mr. Bettin failed to establish a prima facie case of age discrimination. Assuming that he could establish a prima facie case, he has offered no specific evidence to overcome Peregrine's legitimate non-discriminatory reason for termination. He has failed to raise a genuine issue of material fact and we will accordingly grant Peregrine's Motion for Summary Judgment.

An appropriate order will be entered.

## ORDER GRANTING REORGANIZED DEBTOR'S MOTION FOR SUMMARY JUDGMENT

**AND NOW,** this 20th day of January, 2005, for the reasons expressed in the foregoing Memorandum Opinion, it is **ORDERED** that the motion for summary judgment filed on behalf of the Reorganized Debtors, Peregrine Systems, Inc. and Peregrine Remedy, Inc., is **GRANTED.** The proofs of claim numbered 868 and 872 filed by Kenneth W. Bettin are disallowed.